# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

FILED

FEB 1 1 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

ARA KARAPEDYAN, et al. (see attached)



DEFENDANT(S).

# SUPERSEDING INDICTMENT

VIOLATIONS:  Title 18, United States Code, Section 1962(d) – Racketeering Conspiracy; Title 18, United States Code, Section 1028(f) – Conspiracy to Commit Identity Theft; Title 18, United States Code, Section 1029(b)(2) – Conspiracy to Commit Access Device Fraud; Title 18, United States Code, Section 1349 – Conspiracy to Commit Mail, Wire, and Bank Fraud; Title 18, United States Code, Section 1956(h) –Conspiracy to Commit Money Laundering; Title 18, United States Code, Section 1958 – Conspiracy to Use Interstate Facility to Commit Murder-For-Hire; Title 18, United States Code, Section 371 – Conspiracy to Engage in the Unlicensed Wholesale Distribution of Drugs; Title 18, United States Code, Sections 1963, 982(a)(1), and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) – Forfeiture

A true bill.

_____
Foreman

Filed in open court this ___11ᵗʰ___ day of

___February, 2016___    ROSE MAHER

Rose Pei

NO PROCESS   Clerk

MARIA-ELENA JAMES
UNITED STATES MAGISTRATE JUDGE
Bail, $ _____

NO BAIL ARREST WARRANT

BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

FILED

FEB 1 1 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 15-CR-0234-CRB |
| v. | VIOLATIONS:  Title 18, United States Code, Section 1962(d) – Racketeering Conspiracy; Title 18, United States Code, Section 1028(f) – Conspiracy to Commit Identity Theft; Title 18, United States Code, Section 1029(b)(2) – Conspiracy to Commit Access Device Fraud; Title 18, United States Code, Section 1349 – Conspiracy to Commit Mail, Wire, and Bank Fraud; Title 18, United States Code, Section 1956(h) – Conspiracy to Commit Money Laundering; Title 18, United States Code, Section 1958 – Conspiracy to Use Interstate Facility to Commit Murder-For-Hire; Title 18, United States Code, Section 371 – Conspiracy to Engage in the Unlicensed Wholesale Distribution of Drugs; Title 18, United States Code, Sections 492, 981(a)(1)(A) & (C), 982(a)(1), (2), & (7), 1028(b), 1029(c), 1963; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461(c) – Forfeiture |
| (1)   ARA KARAPEDYAN, | |
| (2)   MIHRAN STEPANYAN, | |
| (3)   ARTUR STEPANYAN, | |
| (4)   GEVORK TER-MKRTCHYAN, | |
| (5)   KHACHIG GEUYDIJIAN, | |
| (6)   ARMAN PETROYSAN, | |
| (7)   LANNA KARAPEDYAN, | |
| (8)   MAXWELL STARSKY, | |
| (9)   SEVAK GHARGHANI, | |
| (10)  JEAN DUKMAJIAN, | |
| (11)  KARINE DUKMAJIAN, | SAN FRANCISCO VENUE |
| (12)  ANGELA DUKMAJIAN, | |
| (13)  ARMAN DANIELIAN, | UNDER SEAL |
| (14)  ASATOUR MAGZANYAN, | |
| (15)  TIGRAN SARKISYAN, | |
| (16)  HRIPSIME KHACHTRYAN, | |
| (17)  LOUI ARTIN, | |
| (18)  HUGO MARQUEZ, | |
| (19)  ARMAN ZARGARYAN, | |
| (20)  DMITRIY KUSTOV, | |
| (21)  MICHAEL INMAN, | |
| (22)  ARAXIA NAZARYIAN, | |
| (23)  ALEXANDER SOLIMAN, | |
| (24)  CHERYL BARNDT, | |
| (25)  ERIC FIGUEROA, | |
| (26)  MARC ASHEGHIAN, | |

1

(27)  MICHAEL ASHEGHIAN,                    )
(28)  DAVID MILLER,                          )
(29)  JAMES RUSSO,                           )
(30)  JEANNETTE COUCH,                       )
(31)  MARIE POLICHETTI,                      )
(32)  BERNARDO GUILLEN,                      )
(33)  JAVIER RAMIREZ,                        )
(34)  YAN GERMAN,                            )
(35)  ARTIN SARKISSIANS,                     )
(36)  STANLEY AZRILYAN,                      )
(37)  ARARAT YESAYAN, and                    )
(38)  ILIA NALBANS,                          )
                                             )
        Defendants.                          )
_____)

## SECOND  SUPERSEDING  INDICTMENT

The Grand Jury charges:

### Introductory Allegations

At all times relevant to this Second Superseding Indictment:

1.      Defendant ARA KARAPEDYAN was a businessman in Northridge, California.  He owned and operated a pizza restaurant, called Old Sicily, in North Hollywood, California.

2.      Defendant MIHRAN STEPANYAN was a businessman in Glendale, California.  He owned and operated a California-licensed drug wholesale company, Niva Pharmaceuticals, in North Hollywood, California, although he reported to a California state pharmacy inspector in 2014 that Niva Pharmaceuticals was not engaged in wholesale drug distribution.  Defendant ARTUR STEPANYAN was a cousin of defendant MIHRAN STEPANAYAN and lived in Glendale, California.  MIHRAN STEPANAYAN and ARTUR STEPANYAN created and controlled a variety of business entities, including: Red Rock Capital, Trans Atlantic Capital, GC National Wholesale, Sky Atlantic Capital, and Nationwide Payment Solutions.

3.      Defendant LANNA KARAPEDYAN was ARA KARAPEDYAN's daughter.  Defendant ARMAN PETROYSAN was LANNA KARAPEDYAN's husband and ARA KARAPEDYAN's son-in-law.

4.      Defendants GEVORK TER-MKRTCHYAN, KHACHIG GEUYDIJIAN, MAXWELL

2

1  STARSKY, SEVAK GHARGHANI, and JEAN DUKMAJIAN were associates of ARA

2  KARAPEDYAN.  TER-MKRTCHYAN operated a non-profit medical clinic called All Care One

3  Community Health.  Defendant GEUYDIJIAN operated an unlicensed private mail box business called

4  Mailworks, Etc., in Chatsworth, California.  GEUYDIJIAN also created and controlled other business

5  entities, including: Legal-Act Entities; All American Real Estate Company; and Pro Serve Entities, Inc.

6  STARSKY lived in Studio City, California, and was an associate of ARA KARAPEDYAN.

7  GHARGHANI worked at ARA KARAPEDYAN's pizza restaurant.  JEAN DUKMAJIAN and operated

8  a check cashing business called Duke's Check Cashing in North Hollywood, California.

9       5.     Defendants KARINE DUKMAJIAN and ANGELA DUKMAJIAN were daughters of

10  defendant JEAN DUKMAJIAN, and both worked at Duke's Check Cashing.  ANGELA DUKMAJIAN

11  was Duke's Check Cashing's anti-money laundering and compliance officer and was responsible for

12  verifying that transactions conducted at Duke's Check Cashing met all legal requirements.

13       6.     Defendants ARMAN DANIELIAN, ASATOUR MAGZANYAN, LOUI ARTIN, ILIA

14  NALBANS, and YAN GERMAN were associates of ARA KARAPEDYAN.  DANIELIAN lived in

15  Burbank, California, and created drug wholesale companies, including Nuvo Pharmaceuticals and Niva

16  Pharmaceuticals, by preparing and filing the necessary paperwork.  Defendants TIGRAN SARKISYAN

17  and HRIPSIME KHACHTRYAN were husband and wife and lived in North Hollywood, California.

18  Both were associates of MAXWELL STARSKY.  ILIA NALBANS, formerly known as Ilia

19  Nalbandishvili, lived in Montebello, California, and worked with KARAPEDYAN to negotiate and to

20  attempt to negotiate fraudulent checks.  YAN GERMAN, formerly known as Henrik Harutyunyan, lived

21  in Sherman Oaks, CA, and worked with KARAPEDYAN, MIHRAN STEPANAYAN and ARTUR

22  STEPANYAN to procure and supply prescription drugs.

23       7.     Defendant HUGO MARQUEZ lived in Encino, California, and was involved in the

24  operation of several drug wholesale drug companies, including: Apex Pharmaceuticals, which was

25  licensed in California until in or about November 2011; Maroon Pharma, which was licensed in New

26  York; and ME Wholesale, which was licensed in Pennsylvania.  Defendant ERIC FIGUEROA was a

27  friend and associate of MARQUEZ and helped him procure drugs to sell.  Defendant ARMAN

28  ZARGARYAN was an associate of MARQUEZ who lived in Encino, California.  ZARGARYAN

1   operated a California-licensed drug wholesale company, Nuvo Pharmaceuticals, which had originally

2   been created by ARMAN DANIELIAN.  Defendant DMITRIY KUSTOV was an associate of

3   ZARGARYAN who lived in Los Angeles, California.  STANLEY AZRILYAN supplied drugs to

4   Maroon Pharma through Fox Health Care. Defendant MICHAEL INMAN lived in Beverly Hills,

5   California, and stole checks that were ultimately used to fund a bank account from which ZAGARYAN

6   and KUSTOV tried to withdraw money.  Defendant ARAXIA NAZARYIAN lived in Van Nuys,

7   California, and worked for ZARGARYAN at Nuvo Pharmaceuticals.

8        8.     Defendant ALEXANDER SOLIMAN lived in Valencia, California, and owned and

9   controlled several businesses engaged in the wholesale distribution of drugs, including Apex

10  Pharmaceuticals and Maroon Pharma, which he operated with HUGO MARQUEZ and defendant

11  CHERYL BARNDT.  BARNDT worked at Apex Pharmaceuticals and Maroon Pharma buying and

12  selling drugs.  Defendants MARC ASHEGHIAN and MICHAEL ASHEGHIAN were brothers who

13  lived, respectively, in Sherman Oaks and Los Angeles, California, and controlled Fox Health Care, a

14  drug wholesaler located and licensed in Utah.  Beginning in or around May 2015, AZRILYAN assumed

15  control of Fox Health Care.

16       9.     Defendant DAVID MILLER lived in Santa Ana, California, and owned, operated, and

17  controlled a variety of drug wholesale businesses, including: Minnesota Independent Cooperative

18  ("MIC") in Eaton, Minnesota, which was licensed to wholesale drugs in Minnesota and had an office in

19  Tustin, California, where it was also called E-Tail Network; B&Y Wholesale Distributors, which was

20  licensed to wholesale drugs in Puerto Rico; and FMC Distributors, which was also licensed to wholesale

21  drugs in Puerto Rico.  Defendant JAMES RUSSO lived in Minnesota and worked for MIC in Eaton as

22  Vice-President of Operations.  Defendants JEANNETTE COUCH and MARIE POLICHETTI worked

23  for MIC in Tustin, California, where COUCH was Head of Purchasing and POLICHETTI was the

24  Office Manager and, among other responsibilities, handled paying debts of the company.  BERNARDO

25  GUILLEN and JAVIER RAMIREZ worked for MIC in Tustin, California, where they inspected drugs

26  for MIC and shipped drugs from California to MIC in Minnesota.

27                          Distribution of Improperly Procured Drugs

28

4

10.     The wholesale distribution of drugs in the United States and its territories is subject to federal and state regulation.  Generally speaking, anyone seeking to engage in the distribution of pharmaceuticals must be licensed in the state and territory in which one does business.  Licensing is required in order to ensure that drug distributors procure, handle, and store their drugs in a manner that ensures the drugs' effectiveness and safety.  In addition, applicable laws and regulations require drug distributors to maintain strict records on the provenance of the drugs they sell.  Such drug "pedigrees" must state, at minimum, from whom the distributor purchased the drugs and are intended to allow for the origins of drugs to be readily determined, which is necessary to ensure the effectiveness and safety of the drugs, as well as to facilitate any drug recalls.

11.     Typically, the prices of drugs do not vary greatly.  Drug manufacturers generally set a price, called the Wholesale Acquisition Cost ("WAC"), which is the price they charge to wholesalers and other direct accounts before the application of any rebates, discounts, allowances, and other price concessions.  Given that many drugs are under patent, and thus, subject to monopolistic pricing, there is little deviation from the WAC for non-generic drugs.

12.     Beginning no later than in or about 2009, MIHRAN STEPANYAN and ARTUR STEPANYAN supplied DAVID MILLER and MIC with large amounts of drugs.  MIHRAN STEPANYAN and ARTUR STEPANYAN obtained a portion of these drugs from YAN GERMAN and ARA KARAPEDYAN.  Between in or about 2009 up through April 2015, MIC purchased more than $157 million worth of drugs from MIHRAN STEPANYAN and ARTUR STEPANYAN.  Rather than acquire their drugs lawfully from manufacturers and authorized distributors, MIHRAN STEPANYAN and ARTUR STEPANYAN instead procured the drugs they sold from unlicensed sources.  In order to conceal their unlawful conduct and launder the proceeds thereof, MIHRAN STEPANYAN, ARTUR STEPANYAN, and their associates conducted their drug sales through front companies such as Red Rock Capital, Trans Atlantic Capital, GC National Wholesale, Sky Atlantic Capital, and Nationwide Payment Solutions.  They also conducted their transactions using aliases.  For instance, MIHRAN STEPANYAN conducted many of his drug sales using the names "George Cardashian" and "Zohrab Hovhannisyan" instead of his own true name.

13.     DAVID MILLER and his associates were aware that the drugs MIC purchased from MIHRAN STEPANYAN and ARTUR STEPANYAN had not been supplied through proper channels. MIC employees BERNARD GUILLEN and JAVIER RAMIREZ worked with the STEPANYANs in Southern California to package the drugs and send them from California to either MIC in Minnesota or directly to MIC's customers via UPS.  In order to conceal the true origins of the drugs MIC purchased and sold, MILLER and his associates, such as JEANNETTE COUCH and MARIE POLICHETTI, created false drug pedigrees and invoices, as well as conducted MIC's drug purchases through front companies such as B&Y Wholesale Distributors and FMC Distributors, to make it appear that B&Y Wholesale Distributors and FMC Distributors in Puerto Rico were supplying the drugs that MIC purchased.  MILLER, JAMES RUSSO, COUCH, POLICHETTI, and GUILLEN coordinated their activities via e-mail, telephone, and facsimile, as well as sent fraudulent documents to customers via e-mail.  For example:

a.     On or about November 22, 2012, GUILLEN received an e-mail with an attached invoice for the sale of the drug Cymbalta from an e-mail account for GC National Wholesale, a company controlled by MIHRAN STEPANYAN and ARTUR STEPANYAN.

b.     On or about December 13, 2012, POLICHETTI sent an e-mail to MILLER and an unindicted co-conspirator (the "CC"), attaching instructions for the wire transfer of approximately $1,232,444 to pay a particular invoice, which included payment for Cymbalta.

c.     On or about April 15, 2013, GUILLEN received an e-mail with several attached invoices, including an invoice for the sale of the drug Advair, from an e-mail account for GC National Wholesale.

d.     On or about May 28, 2013, the GC National Wholesale e-mail account sent an e-mail to POLICHETTI, stating, "Hi Marie, Urgent!!!  Do you have any ready to pay invoices??  Pleae [sic] let me know.. [sic]  Thanks."

e.     Later on or about May 28, 2013, POLICHETTI responded to the preceding e-mail from GC National Wholesale, stating, "Hi George, I have to wait until tomorrow; I need David's approval and he won't be in until tomorrow."

f.      On or about May 30, 2013, POLICHETTI sent an e-mail to the CC and MILLER with an attached document describing a payment of $1,214,424 from MIC to B&Y Wholesale Distributors relating to the sale of the drug Advair.

g.      Later on about May 30, 2013, POLICHETTI sent an e-mail to the CC and MILLER, attaching instructions for the wire transfer of approximately $1,205,197 to a GC National Wholesale bank account.

h.      On or about September 19, 2013, GUILLEN received an e-mail with several attached invoices, including an invoice for the sale of Cymbalta, from an e-mail account for GC National Wholesale.

i.      On or about October 7, 2013, POLICHETTI sent an e-mail to the CC and MILLER with an attached document describing a payment of approximately $1,052,581 from MIC to B&Y Wholesale Distributors, in part for the sale of Cymbalta.

j.      Approximately one minute after sending the preceding e-mail, on or about October 7, 2013, POLICHETTI sent another e-mail to the CC and MILLER attaching instructions for the wire transfer of approximately $853,402 to a GC National Wholesale bank account.

14.     In addition, with each shipment of drugs that MIC sold to a customer, MIC provided an access code so that the customer could download the pedigree information for the purchased drugs via the web site www.micoop.com, which was maintained by an Internet Service Provider in the Northern District of California.  MILLER caused to be posted on www.micoop.com fraudulent drug pedigree information for MIC customers to download.  For example, set forth in the table below, between approximately November 2012 and February 2014, MIC sent thirty-two shipments of drugs to a pharmacy customer in Texas and posted pedigree information on www.micoop.com claiming that the drugs had been supplied by B&Y Wholesale Distributors in Puerto Rico when, in fact, they had been supplied from California directly to the customer:

| UPS Tracking Number | Delivery Date | MIC Invoice Number |
|---|---|---|
| 1Z13VR001340660996 | 11/07/2012 | 15857 |
| 1Z13VR001341413984 | 11/08/2012 | 15915 |

| 1Z13VR001341621580 | 12/03/2012 | 16298 |
| 1Z13VR001340029124 | 12/12/2012 | 16452 |
| 1Z13VR001340724711 | 12/20/2012 | 16600 |
| 1Z13VR000241346569 | 12/31/2012 | 16672 |
| 1Z13VR001341561725 | 12/31/2012 | 16720 |
| 1Z13VR001342156706 | 02/06/2013 | 17237 |
| 1Z13VR000242067396 | 02/11/2013 | 17308 |
| 1Z13VR000241976914 | 02/28/2013 | 17634 |
| 1Z13VR000240928272 | 03/15/2013 | 17919 |
| 1Z13VR001342054521 | 03/20/2013 | 18052 |
| 1Z13VR001340903385 | 04/04/2013 | 18342 |
| 1Z13VR000242139782 | 04/08/2013 | 18380 |
| 1Z13VR001340904900 | 04/25/2013 | 18766 |
| 1Z13VR000240374147 | 05/13/2013 | 19097 |
| 1Z13VR000241435187 | 05/22/2013 | 19349 |
| 1Z13VR001341753152 | 05/31/2013 | 19575 |

| UPS Tracking Number | Delivery Date | MIC Invoice Number |
|---|---|---|
| 1Z13VR001341172520 | 06/18/2013 | 19945 |
| 1Z13VR000242544709 | 06/26/2013 | 20146 |
| 1Z13VR001342849511 | 07/05/2013 | 20410 |
| 1Z13VR000241001412 | 07/24/2013 | 20710 |
| 1Z13VR001342883706 | 08/08/2013 | 21105 |
| 1Z13VR001342302646 | 08/28/2013 | 21490 |
| 1Z13VR001341450336 | 09/16/2013 | 21807 |
| 1Z13VR001341625317 | 10/04/2013 | 22265 |
| 1Z13VR001342896158 | 10/31/2013 | 22974 |
| 1Z13VR001340406832 | 12/13/2013 | 24030 |
| 1Z13VR000240240666 | 12/26/2013 | 24149 |
| 1Z13VR000340407556 | 01/03/2014 | 24390 |
| 1Z13VR001341660636 | 02/12/2014 | 25152 |
| 1Z13VR001341272225 | 02/25/2014 | 25431 |

15.     HUGO MARQUEZ, STANLEY AZRILYAN, and ARMAN ZARGARYAN similarly engaged in the distribution of drugs they procured from unlicensed sources. ERIC FIGUEROA helped MARQUEZ find drugs from unlicensed sources. Beginning no later than in or about 2012 and continuing through 2013, they sold in excess of $24 million worth of improperly procured drugs to Apex Pharmaceuticals, Maroon Pharma, and ME Wholesale – which was a business originally created by MIHRAN STEPANYAN and ARTUR STEPANYAN – which then sold the drugs to other customers.

16.     Apex Pharmaceuticals and Maroon Pharma were operated by ALEXANDER SOLIMAN and CHERYL BARNDT, who worked with MARQUEZ and were aware that the drugs their businesses

1 purchased had not been supplied through proper channels. BARNDT, who dealt with customers for

2 Apex Pharmaceuticals and Maroon Pharma, sent e-mails containing false pedigree information to

3 customers.    Generally, these pedigrees falsely claimed that the drugs being sold had been supplied by

4 authorized drug distributers when, in fact, they had not been.  In addition, SOLIMAN and BARNDT

5 caused Maroon Pharma to pay the ASHEGHIANs' drug wholesale company, Fox Health Care, but the

6 ASHEGHIANs transferred much of the money into other bank accounts, including accounts controlled

7 by MARQUEZ and AZRILYAN, as well as another account from which much of the money was

8 withdrawn via ATM cash withdrawals.  For ME Wholesale transactions, MARQUEZ also claimed to

9 have been supplied by Nuvo Pharmaceuticals.  Nuvo Pharmaceuticals, however, was a business

10 originally created by ARMAN DANIELIAN and it did not receive drugs from the manufacturers and

11 authorized distributors that it claimed it did.  In addition, Nuvo Pharmaceuticals was controlled and

12 operated by ARMAN ZARGARYAN under the alias "Ara Yeramyan."  From in or about September

13 2013 to in or about December 2013, ARAXIA NAZARYIAN withdrew more than $2 million in Nuvo

14 Pharmaceuticals proceeds from bank accounts maintained under the "Ara Yermamyan" name.  In or

15 around May 2015, AZRILYAN assumed ownership of Fox Health Care and continued to sell drugs

16 obtained from unlicensed sources.

17        17.       ARA KARAPEDYAN likewise engaged in the unlicensed sale of improperly procured

18 drugs.  On at least three occasions in 2013, KARAPEDYAN met with a purchaser in various parking

19 lots in the Eastern District of California and delivered boxes and bottles of drugs such as Abilify,

20 Liboderm, Cymbalta, Namenda, Atripla, Truvada, and Isentress, as well as oxycodone.  In addition, on

21 or about January 8, 2015, SEVAK GHARGHANI, on KARAPEDYAN's behalf, delivered several

22 bottles of the cancer medication Gleevec to a purchaser in the Northern District of California.

23 KARAPEDYAN also sold more than $2 million of drugs from his pizza restaurant in North Hollywood,

24 California, on or about May 4, 2015.

25        18.       In addition, ARA KARAPEDYAN and MAXWELL STARSKY, from in or about

26 October 2014 through in or about January 2015, provided ME Wholesale with more than $1 million

27 worth of improperly procured drugs.

28

19.     Furthermore, ARA KARAPEDYAN and YAN GERMAN also supplied MIHRAN STEPANYAN and ARTUR STEPANYAN with drugs in or about 2014.

<u>Negotiation of Fraudulent Checks</u>

20.     From at least in or about September 2012 through in or about November 2014, ARA KARAPEDYAN, GEVORK TER-MKRTCHYAN, KHACHIG GEUYDIJIAN, ARMAN PETROYSAN, LANNA KARAPEDYAN, MAXWELL STARSKY, SEVAK GHARGHANI, JEAN DUKMAJIAN, KARINE DUKMAJIAN, ANGELA DUKMAJIAN, ASATOUR MAGZANYAN, TIGRAN SARKISYAN, HRIPSIME KHACHTRYAN, LOUI ARTIN, HUGO MARQUEZ, ARMAN ZARGARYAN, DMITRIY KUSTOV, MICHAEL INMAN, ILIA NALBANS and their associates negotiated and attempted to negotiate in excess of 500 fraudulent checks totaling more than $5 million and issued to a variety of payees.  ARA KARAPEDYAN, PETROYSAN, LANNA KARAPEDYAN, and GHARGHANI delivered, and sent via mail, many of these checks to the Northern District of California to be negotiated.  ARA KARAPEDYAN, PETROYSAN, LANNA KARAPEDYAN, and GHARGHANI also traveled to the Northern District of California to pick up cash derived from the negotiation of these checks.

21.     A substantial portion of the fraudulent checks were tax refund checks sent by mail by the United States Treasury, and many of these tax refund checks had been issued based on fraudulent tax returns filed with the Internal Revenue Service.  ASATOUR MAGZANYAN, TIGRAN SARKISYAN, HRIPSIME KHACHTRYAN, and KHACHIG GEUYDIJIAN, among others, acquired and possessed identifying information for dozens of individuals, which was used to file fraudulent tax returns online. GEUYDIJIAN also used his mailbox business Mailworks, Etc., as the address of record for many such tax filings and as the address to where tax return checks were to be sent.  For example, set forth in the following table are fifty-three tax refund checks totaling approximately $599,267.96 sent through the mail by the United States Treasury as a result of the filing of fraudulent tax return documents, which KARAPEDYAN delivered to the Northern District of California to be negotiated:

| Check Number | Check Date | Check Amount |
|---|---|---|
| 4500-08313952 | 05/17/2013 | $6,462.94 |
| 3158-68155188 | 05/17/2013 | $8,159.04 |
| 3158-68443706 | 05/20/2013 | $9,275.84 |
| 4500-56005433 | 04/19/2013 | $20,320.00 |
| 3158-60807022 | 04/19/2013 | $22,429.00 |
| 3158-58471443 | 04/12/2013 | $25,084.00 |
| 3158-56479608 | 04/05/2013 | $25,515.00 |
| 3158-68572295 | 05/22/2013 | $1,492.00 |
| 3158-68888078 | 05/24/2013 | $3,719.00 |
| 3158-68893904 | 05/24/2013 | $7,741.00 |
| 3158-68266226 | 05/17/2013 | $10,468.68 |
| 3158-63735257 | 04/26/2013 | $14,984.00 |
| 3158-66059051 | 05/06/2013 | $23,625.00 |
| 3158-66059050 | 05/06/2013 | $24,097.46 |
| 3158-66141009 | 05/06/2013 | $25,573.00 |
| 3158-66768123 | 05/10/2013 | $24,362.00 |
| 3158-58833121 | 04/15/2013 | $25,025.00 |
| 3158-69835265 | 06/07/2013 | $25,571.45 |
| 3158-67101159 | 05/10/2013 | $25,607.16 |
| 3161-01614535 | 08/23/2013 | $2,169.00 |
| 3158-65847079 | 05/03/2013 | $3,564.00 |
| 3158-65876781 | 05/03/2013 | $3,706.00 |
| 3158-71325746 | 07/08/2013 | $4,477.61 |
| 3158-36786520 | 07/09/2012 | $9,541.00 |
| 3158-38866733 | 08/31/2012 | $7,674.60 |
| 4500-55912111 | 12/17/2012 | $6,682.00 |
| 3158-42058313 | 12/07/2012 | $7,424.83 |
| 3158-42329256 | 12/21/2012 | $7,431.00 |
| 3158-42488640 | 12/31/2012 | $7,451.00 |
| Check Number | Check Date | Check Amount |
| 3158-42488638 | 12/31/2012 | $7,471.00 |
| 3158-41907640 | 11/30/2012 | $7,491.00 |
| 3161-01852740 | 09/03/2013 | $3,795.34 |
| 3161-01833316 | 08/30/2013 | $6,080.26 |
| 3161-01833630 | 08/30/2013 | $8,073.00 |
| 4034-00428527 | 09/13/2013 | $2,195.65 |
| 4034-00428535 | 09/13/2013 | $3,308.47 |
| 4034-00621000 | 09/20/2013 | $6,202.00 |
| 4034-00823740 | 09/27/2013 | $5,002.00 |
| 4034-00619939 | 09/20/2013 | $6,816.00 |
| 4034-00619945 | 09/20/2013 | $7,106.00 |
| 4034-00619940 | 09/20/2013 | $8,091.00 |
| 4034-00619946 | 09/20/2013 | $8,221.00 |
| 4034-00619935 | 09/20/2013 | $8,416.00 |
| 4034-01056506 | 10/07/2013 | $7,466.00 |
| 4034-01467808 | 10/25/2013 | $4,424.00 |
| 4034-01409029 | 10/25/2013 | $9,669.62 |
| 4034-02194382 | 11/14/2013 | $7,707.69 |
| 4500-69271152 | 09/13/2013 | $7,870.32 |
| 3158-42681732 | 01/30/2013 | $8,436.00 |
| 3158-60836989 | 04/19/2013 | $4,008.00 |

| | | |
|---|---|---|
| 3158-60807020 | 04/19/2013 | $23,831.00 |
| 3158-60807028 | 04/19/2013 | $24,651.00 |
| 3158-61221588 | 04/22/2013 | $23,303.00 |

22.     Tax refund checks procured through the filing of fraudulent tax filings, however, were not the only checks from which the defendant sought to profit.  For instance, GEVORK TER-MKRTCHYAN provided checks either issued from a bank account maintained under the name for his non-profit clinic, All Care One Community Health, or issued to All Care One Community Health as the payee.  In addition, MICHAEL INMAN in 2013 stole several high-value cashier's checks from a woman, which ARMAN ZARGARYAN and DMITRIY KUSTOV used to fund a bank account created under the woman's name from which they wrote checks.  Furthermore, in or about March 2014, KHACHIG GEUYDIJIAN attempted to negotiate two high-value tax return checks that had simply been stolen from their rightful owners, one of whom was a movie director, the other, the drummer of a popular band.  For example, set forth in the following table are twelve fraudulent checks totaling approximately $107,656.79 that were delivered to the Northern District of California to be negotiated:

| Bank/Check Number | Check Date | Check Amount |
|---|---|---|
| JP Morgan/1090 | 05/22/2013 | $5,186.19 |
| JP Morgan/1089 | 05/19/2013 | $4,980.60 |
| Hanin Credit Union/103798 | 09/11/2013 | $18,254.00 |
| Hanin Credit Union/103796 | 09/11/2013 | $20,147.00 |
| Hanin Credit Union/103802 | 09/11/2013 | $21,457.00 |
| Hanin Credit Union/103800 | 09/11/2013 | $20,487.00 |
| Well Fargo/5693 | 09/11/2013 | $2,100.00 |
| Well Fargo/5492 | 07/02/2013 | $5,100.00 |
| Well Fargo/5330 | 05/06/2013 | $1,700.00 |
| Well Fargo/6792 | 09/13/2013 | $3,500.00 |
| Well Fargo/6795 | 09/13/2013 | $3,500.00 |
| Well Fargo/3033 | 09/17/2013 | $1,245.00 |

23.     The negotiation of fraudulent checks was also facilitated by JEAN DUKMAJIAN, KARINE DUKMAJIAN, and ANGELA DUKMAJIAN through their business, Duke's Check Cashing.  The DUKMAJIANs allowed ARA KARAPEDYAN and his associates to negotiate numerous fraudulent checks through Duke's Check Cashing in exchange for a percentage of the proceeds.  ANGELA DUKMAJIAN, Duke's Check Cashing's anti-money laundering and compliance officer, also

1  inaccurately prepared records that were required to be provided to federal authorities in order to conceal
2  their scheme.

3

4

5                                   Money Laundering

6      24.     The defendants' drug distribution and check fraud schemes generated substantial amounts
7  of cash, and they sought to launder their illicit proceeds by transferring the money through various bank
8  accounts opened under the names of various businesses and numerous individuals' identities.

9      25.     For instance, between in or about August 2013 and in or about January 2014, MIHRAN
10 STEPANYAN's drug wholesale company, GC National Wholesale, wired approximately $1,303,149.98
11 to a business to which ARA KARAPEDYAN had access.  KARAPEDYAN caused almost all of these
12 wire transfers to be converted into cash, much of which KARAPEDYAN picked up in the Northern
13 District of California, including on or about August 16, 23, and 30, 2013, September 6 and 26, 2013,
14 October 3, 15, and 22, 2013, November 8 and 12, 2013, and December 5 and 23, 2013.  Set forth in the
15 following table are the wire transfers from GC National Wholesale:

16

| Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|
| 08/12/2013 | Wire Transfer | $100,005.50 |
| 08/12/2013 | Wire Transfer | $80,382.05 |
| 08/12/2013 | Wire Transfer | $59,300.10 |
| 08/12/2013 | Wire Transfer | $49,997.10 |
| 08/15/2013 | Wire Transfer | $104,556.99 |
| 08/28/2013 | Wire Transfer | $102,225.97 |
| 08/28/2013 | Wire Transfer | $50,008.50 |
| 09/20/2013 | Wire Transfer | $61,424.25 |
| 09/27/2013 | Wire Transfer | $5,674.25 |
| 10/08/2013 | Wire Transfer | $50,001.10 |

| 10/08/2013 | Wire Transfer | $150,005.10 |
|---|---|---|
| 10/31/2013 | Wire Transfer | $96,397.20 |
| 10/31/2013 | Wire Transfer | $97,105.10 |
| 11/19/2013 | Wire Transfer | $113,376.00 |
| 12/23/2013 | Wire Transfer | $32,680.17 |
| 01/10/2014 | Wire Transfer | $61,205.10 |
| 01/10/2014 | Wire Transfer | $88,805.50 |

26.    Similarly, in September 2014, MIHRAN STEPANYAN asked KARAPEDYAN to launder more money, this time, from another one of STEPANYAN's companies, Nationwide Payment Solutions.  KARAPEDYAN, however, did not end up receiving any money from Nationwide Payment Solutions.  Rather, at least some of the money from Nationwide Payment Solutions was transferred by wire to purchase ~~make~~ millions of dollars of gold by someone known only as "Gary" to the gold seller.  Similarly, between October 2012 and March 2014, MIHRAN STEPANYAN and ARTUR STEPANYAN used false identities and their associated bank accounts, established by ARARAT YESAYAN and ARTIN SARKISSIANS, to launder approximately $32,571,853 from GC National Wholesale.

27.    Similarly, between in or about October 2014 and in or about February 2015, ME Wholesale wired approximately $1,227,500 to another business to which KARAPEDYAN had access.  KARADPEYAN caused almost all of these wire transfers to be converted into cash or to be sent as further wire transfers to other bank accounts maintained under such names as "Sevak Gharghani," "LG Construction," "American Eagle Coins," "Starsky Development Group," "Hovik's Billing Service," and "MJ Trade Group."  KARAPEDYAN picked up much of the cash in the Northern District of California, including on or about November 14 and 24, 2014, and December 8 and 22, 2014, while his associates, such as SEVAK GHARGHANI, MAXWELL STARSKY, and LOUI ARTIN, accessed the money that had been wired into the bank accounts.  Set forth in the following table are the wire transfers from ME Wholesale:

| Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|
| 10/29/2014 | Wire Transfer | $20,000.00 |
| 11/07/2014 | Wire Transfer | $370,000.00 |
| 11/13/2014 | Wire Transfer | $198,000.00 |
| 11/17/2014 | Wire Transfer | $90,000.00 |
| 11/21/2014 | Wire Transfer | $6,700.00 |
| 12/01/2014 | Wire Transfer | $143,000.00 |
| 12/03/2014 | Wire Transfer | $198,000.00 |
| 12/10/2014 | Wire Transfer | $140,000.00 |
| 12/17/2014 | Wire Transfer | $55,000.00 |
| 02/05/2015 | Wire Transfer | $6,800.00 |

<u>Murder-For-Hire</u>

28. From in or about August 2014 through in or about November 2014, ARA KARAPEDYAN and GEVORK TER-MKRTCHYAN sought individuals who would be willing to kill someone (the "Victim") who had angered TER-MKRTCHYAN. During these months, KARAPEDYAN made numerous calls to the Northern District of California seeking individuals willing to carry out the attack. KARAPEDYAN and TER-MKRTCHYAN also had meetings with an FBI undercover agent to further discuss the plot, and they eventually agreed to pay $1,500 for the task. The attack on the Victim was never carried out.

<u>COUNT ONE</u>: (18 U.S.C. § 1962(d) – Racketeering Conspiracy)

29. Paragraphs 1 through 28 of this Second Superseding Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein.

<u>The Racketeering Enterprise</u>

30. Defendants ARA KARAPEDYAN, MIHRAN STEPANYAN, ARTUR STEPANYAN, GEVORK TER-MKRTCHYAN, KHACHIG GEUYDIJIAN, ARMAN PETROYSAN, LANNA ARAPEDYAN, MAXWELL STARSKY, SEVAK GHARGHANI, JEAN DUKMAJIAN, KARINE DUKMAJIAN, ANGELA DUKMAJIAN, ARMAN DANIELIAN, ASATOUR MAGZANYAN,

1 TIGRAN SARKISYAN, HRIPSIME KHACHTRYAN, LOUI ARTIN, HUGO MARQUEZ, ARMAN

2 ZARGARYAN, DMITRIY KUSTOV, DAVID MILLER, YAN GERMAN, ARTIN SARKISSIANS,

3 and STANLEY AZRILYAN, and the entities owned, operated, and controlled by them, including All

4 Care One Community Health, Legal-Act Entities, Mailworks, Etc., All American Real Estate Company,

5 Pro Serve Entities, Inc., Duke's Check Cashing, LG Construction, American Eagle Coins, Starsky

6 Development Group, Hovik's Billing Service, MJ Trade Group, Niva Pharmaceuticals, Nuvo

7 Pharmaceuticals, Red Rock Capital, Trans Atlantic Capital, GC National Wholesale, Sky Atlantic

8 Capital, Nationwide Payment Solutions, Massihi Group, Massihi Imports and Export, DR Merchandise,

9 JB Trading, DL Trading, AK Trading Group, Nulife Wholesale, HP Industry Group, Apex

10 Pharmaceuticals, Maroon Pharma, ME Wholesale, MIC, B&Y Wholesale Distributors, and FMC

11 Distributors, together with others known and unknown, comprised the "Karapedyan-Stepanyan

12 Enterprise." The Karapedyan-Stepanyan Enterprise, including its leadership, members, and associates,

13 in the Northern District of California and elsewhere, constituted an "enterprise" as defined in Title 18,

14 United States Code, Section 1961(4), that is, a group of individuals and entities associated in fact. The

15 enterprise constituted an ongoing organization whose members functioned as a continuing unit for a

16 common purpose of achieving the objectives of the enterprise. The enterprise engaged in, and its

17 activities affected, interstate and foreign commerce.

18 <u>Purposes of the Enterprise</u>

19     31.    The purposes of the Karapedyan-Stepanyan Enterprise included but were not limited to

20 the following:

21     a.    Obtaining profits and property for its members and associates through the

22 commission of criminal acts, including, but not limited to, identity theft, fraudulent use of access

23 devices, mail, wire, and bank fraud, the unlicensed wholesale distribution of drugs, and money

24 laundering;

25     b.    Promoting and enhancing the enterprise and the activities of its members and

26 associates;

27     c.    Providing assistance to other enterprise members and associates in order to

28 hinder, obstruct, and prevent law enforcement officers from identifying the offenders, apprehending the

1    offenders, and successfully prosecuting and punishing the offenders;

2             d.     Eliminating through violence and the threat of violence individuals who opposed
3    or angered enterprise members and associates.

4                              Means and Methods of the Enterprise

5        32.     Among the means and methods by which the members and associates of the Karapedyan-
6    Stepanyan Enterprise conducted and participated in the conduct of the affairs of the enterprise were the
7    following:

8             a.     The members and associates of the Karapedyan-Stepanyan Enterprise used false
9    and stolen identities and fraudulent and unauthorized access devices, such as Social Security and bank
10   account numbers, to negotiate stolen and counterfeit checks.

11            b.     The members and associates of the Karapedyan-Stepanyan Enterprise used false
12   and stolen identities and fraudulent and unauthorized access devices, such as Social Security and Tax
13   Identification numbers, to file fraudulent federal tax returns in order to induce the United States
14   Treasury to issue tax refund checks through the mail.

15            c.     The members and associates of the Karapedyan-Stepanyan Enterprise used false
16   and stolen identities to create bank accounts through which they could negotiate stolen and counterfeit
17   checks as well as launder money.

18            d.     The members and associates of the Karapedyan-Stepanyan Enterprise created
19   shell businesses to engage in the sale of improperly procured and handled drugs.

20            e.     The members and associates of the Karapedyan-Stepanyan Enterprise created
21   false drug pedigree information that they sent to customers via mail or e-mail and posted on a web site
22   to facilitate their sales of improperly procured and handled drugs.

23            f.     The members and associates of the Karapedyan-Stepanyan Enterprise created
24   documents containing false information, such as fraudulent invoices, false contracts, and other
25   fraudulent business records, in order to facilitate their criminal activities.

26                              The Racketeering Conspiracy

27       33.     From at least in or about 2009, up through and including on or about May 6, 2015, in the
28   Northern District of California and elsewhere, the defendants,

1           (1) ARA KARAPEDYAN,

2           (2) MIHRAN STEPANYAN,

3           (3) ARTUR STEPANYAN,

4           (4) GEVORK TER-MKRTCHYAN,

5           (5) KHACHIG GEUYDIJIAN,

6           (6) ARMAN PETROYSAN,

7           (7) LANNA KARAPEDYAN,

8           (8) MAXWELL STARSKY,

9           (9) SEVAK GHARGHANI,

10           (10) JEAN DUKMAJIAN,

11           (11) KARINE DUKMAJIAN,

12           (12) ANGELA DUKMAJIAN,

13           (13) ARMAN DANIELIAN,

14           (14) ASATOUR MAGZANYAN,

15           (15) TIGRAN SARKISYAN,

16           (16) HRIPSIME KHACHTRYAN,

17           (17) LOUI ARTIN,

18           (18) HUGO MARQUEZ,

19           (19) ARMAN ZARGARYAN,

20           (20) DMITRIY KUSTOV

21           (21) DAVID MILLER,

22           (22) YAN GERMAN,

23           (23) ARTIN SARKISSIANS, and

24           (24) STANLEY AZRILYAN

25 and others known and unknown, being persons employed by and associated with the enterprise

26 described above, namely, the Karapedyan-Stepanyan Enterprise, which enterprise was engaged in, and

27 the activities of which affected, interstate and foreign commerce, unlawfully and knowingly conspired

28 together and with one another to conduct and participate, directly and indirectly, in the conduct of the

affairs of the enterprise through a pattern of racketeering activity, which pattern of racketeering consisted of:

        a.      multiple acts and threats involving murder under Sections 187, 189, 182, 21a, 664, 653f(b), and 31 of the California Penal Code; and

        b.      multiple acts indictable under Title 18, United States Code, Sections 1028, 1029, 1341, 1343, 1344, 1956, 1957, and 1958.

34.    It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO:  (18 U.S.C. § 1028(f) – Conspiracy to Commit Identity Theft)

35.    Paragraphs 1 through 34 of this Second Superseding Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein.

36.    From at least in or about 2009, up through and including on or about May 6, 2015, in the Northern District of California and elsewhere, the defendants,

(1) ARA KARAPEDYAN,

(2) MIHRAN STEPANYAN,

(3) ARTUR STEPANYAN,

(4) GEVORK TER-MKRTCHYAN,

(5) KHACHIG GEUYDIJIAN,

(6) ARMAN PETROYSAN,

(7) LANNA KARAPEDYAN,

(8) MAXWELL STARSKY,

(9) SEVAK GHARGHANI,

(10) JEAN DUKMAJIAN,

(11) KARINE DUKMAJIAN,

(12) ANGELA DUKMAJIAN,

(13) ARMAN DANIELIAN,

(14) ASATOUR MAGZANYAN,

1            (15) TIGRAN SARKISYAN,

2           (16) HRIPSIME KHACHTRYAN,

3             (17) LOUI ARTIN,

4            (18) HUGO MARQUEZ,

5           (19) ARMAN ZARGARYAN,

6           (20) DMITRIY KUSTOV,

7            (21) DAVID MILLER,

8            (22) YAN GERMAN,

9          (23)ARTIN SARKISSIANS, and

10          (24) ARARAT YESAYAN

11 and others known and unknown, unlawfully and knowingly conspired together and with one another to

12 violate Title 18, United States Code, Section 1028(a)(1), (4), and (7).

13      37.     It was a part and an object of the conspiracy that the defendants named in paragraph 36,

14 and others known and unknown, unlawfully and knowingly would and did possess with intent to use

15 unlawfully five and more identification documents other than one issued lawfully for the use of the

16 possessor, authentication features, and false identification documents, in violation of Title 18, United

17 States Code, 1028(a)(3).

18      38.     It was further a part and an object of the conspiracy that the defendants named in

19 paragraph 36, and others known and unknown, unlawfully and knowingly would and did possess an

20 identification document other than one issued lawfully for the use of the possessor, authentication

21 feature, and false identification document, with the intent such document and feature be used to defraud

22 the United States, in violation of Title 18, United States Code, 1028(a)(4).

23      39.     It was further a part and an object of the conspiracy that the defendants named in

24 paragraph 36, and others known and unknown, unlawfully and knowingly would and did transfer,

25 possess, and use, without lawful authority, a means of identification of another person with the intent to

26 commit, and to aid and abet, and in connection with, any unlawful activity that constitutes a violation of

27 Federal law, in violation of Title 18, United States Code, 1028(a)(7).

28      All in violation of Title 18, United States Code, Section 1028(f).

1   COUNT THREE:  (18 U.S.C. § 1029(b)(2) – Conspiracy to Commit Access Device Fraud)

2        40.    Paragraphs 1 through 34 of this Second Superseding Indictment are realleged, repeated,

3   and incorporated by reference as though fully set forth herein.

4        41.    From at least in or about 2009, up through and including on or about May 6, 2015, in the

5   Northern District of California and elsewhere, the defendants,

6                   (1) ARA KARAPEDYAN,

7                   (2) MIHRAN STEPANYAN,

8                   (3) ARTUR STEPANYAN,

9                   (4) GEVORK TER-MKRTCHYAN,

10                  (5) KHACHIG GEUYDIJIAN,

11                  (6) ARMAN PETROYSAN,

12                  (7) LANNA KARAPEDYAN,

13                  (8) MAXWELL STARSKY,

14                  (9) SEVAK GHARGHANI,

15                  (10) JEAN DUKMAJIAN,

16                  (11) KARINE DUKMAJIAN,

17                  (12) ANGELA DUKMAJIAN,

18                  (13) ARMAN DANIELIAN,

19                  (14) ASATOUR MAGZANYAN,

20                  (15) TIGRAN SARKISYAN,

21                  (16) HRIPSIME KHACHTRYAN,

22                  (17) LOUI ARTIN,

23                  (18) HUGO MARQUEZ,

24                  (19) ARMAN ZARGARYAN,

25                  (20) DMITRIY KUSTOV, and

26                  (21) DAVID MILLER

27  and others known and unknown, unlawfully and knowingly conspired together and with one another to

28  violate Title 18, United States Code, Section 1029(a)(1), (2), (3) and (5).

21

42. It was a part and an object of the conspiracy that the defendants named in paragraph 41, and others known and unknown, unlawfully and knowingly, and with intent to defraud, would and did use one and more counterfeit access devices, in violation of Title 18, United States Code, 1029(a)(1).

43. It was further a part and an object of the conspiracy that the defendants named in paragraph 41, and others known and unknown, unlawfully and knowingly, and with intent to defraud, would and did use one and more unauthorized access devices during a one-year period, and by such conduct, obtained anything of value aggregating $1,000 and more during that period, in violation of Title 18, United States Code, 1029(a)(2).

44. It was further a part and an object of the conspiracy that the defendants named in paragraph 41, and others known and unknown, unlawfully and knowingly, and with intent to defraud, would and did possess fifteen and more devices which were counterfeit and unauthorized access devices, in violation of Title 18, United States Code, 1029(a)(3).

45. It was further a part and an object of the conspiracy that the defendants named in paragraph 41, and others known and unknown, unlawfully and knowingly, and with intent to defraud, would and did effect transactions, with 1 and more access devices issued to another person, to receive payment and any other thing of value during any 1-year period the aggregate value of which was equal to and greater than $1,000, in violation of Title 18, United States Code, 1029(a)(5).

<u>Overt Acts</u>

46. In furtherance of the conspiracy, and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Northern District of California:

a. On or about October 17, 2012, SEVAK GHARGHANI delivered checks to the Northern District of California.

b. On or about September 12, 2013, ARA KARAPEDYAN picked up cash and delivered checks in the Northern District of California.

c. On or about October 15, 2013, ARA KARAPEDYAN picked up cash and delivered checks in the Northern District of California.

d. On or about October 22, 2013, ARA KARAPEDYAN picked up cash and delivered a check in the Northern District of California.

1    e.    On or about November 26, 2013, ARMAN PATROYSAN and LANNA

2  KARAPEDYAN picked up cash in the Northern District of California.

3    f.    On or about November 26, 2013, LANNA KARAPEDYAN called ARA

4  KARAPEDYAN from the Northern District of California.

5    g.    On or about December 20, 2013, ARA KARAPEDYAN picked up cash and

6  delivered checks in the Northern District of California.

7    h.    On or about November 24, 2014, ARA KARAPEDYAN picked up cash and

8  delivered checks in the Northern District of California.

9    All in violation of Title 18, United States Code, Section 1029(b)(2).

10  COUNT FOUR:  (18 U.S.C. § 1349 – Conspiracy to Commit Mail, Wire, and Bank Fraud)

11    47.    Paragraphs 1 through 34 of this Second Superseding Indictment are realleged, repeated,

12  and incorporated by reference as though fully set forth herein.

13    48.    From at least in or about 2009, up through and including on or about May 6, 2015, in the

14  Northern District of California and elsewhere, the defendants,

15                        (1) ARA KARAPEDYAN,

16                        (2) MIHRAN STEPANYAN,

17                        (3) ARTUR STEPANYAN,

18                      (4) GEVORK TER-MKRTCHYAN,

19                        (5) KHACHIG GEUYDIJIAN,

20                        (6) ARMAN PETROYSAN,

21                        (7) LANNA KARAPEDYAN,

22                        (8) MAXWELL STARSKY,

23                        (9) SEVAK GHARGHANI,

24                        (10) JEAN DUKMAJIAN,

25                        (11) KARINE DUKMAJIAN,

26                        (12) ANGELA DUKMAJIAN,

27                        (13) ARMAN DANIELIAN,

28                      (14) ASATOUR MAGZANYAN,

(15) TIGRAN SARKISYAN,

(16) HRIPSIME KHACHTRYAN,

(17) LOUI ARTIN,

(18) HUGO MARQUEZ,

(19) ARMAN ZARGARYAN,

(20) DMITRIY KUSTOV,

(21) MICHAEL INMAN,

(22) ARAXIA NAZARYIAN,

(23) ALEXANDER SOLIMAN,

(24) CHERYL BARNDT,

(25) ERIC FIGUEROA,

(26) MARC ASHEGHIAN,

(27) MICHAEL ASHEGHIAN,

(28) DAVID MILLER,

(29) JAMES RUSSO,

(30) JEANNETTE COUCH,

(31) MARIE POLICHETTI,

(32) BERNARDO GUILLEN,

(33) JAVIER RAMIREZ,

(34) YAN GERMAN,

(35)ARTIN SARKISSIANS,

(36) STANLEY AZRILYAN, and

(37) ARARAT YESAYAN,

and others known and unknown, unlawfully and knowingly conspired together and with one another to violate Title 18, United States Code, Sections 1341, 1343, and 1344.

49.     It was a part and an object of the conspiracy that the defendants named in paragraph 48, and others known and unknown, unlawfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent

24

1  pretenses, representations, and promises, for the purpose of executing such scheme and artifice would

2  and did place in a post office and authorized depository for mail matter, a matter and thing whatever to

3  be sent and delivered by the Postal Service and a private and commercial interstate carrier, and take and

4  receive therefrom, a matter and thing, and knowingly cause to be delivered by mail and such carrier

5  according to the direction thereon, and at the place at which it is directed to be delivered by the person to

6  whom it is addressed, a matter and thing, in violation of Title 18, United States Code, Section 1343.

7       50.    It was further a part and an object of the conspiracy that the defendants named in

8  paragraph 48, and others known and unknown unlawfully and knowingly, having devised and intending

9  to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and

10  fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted

11  by means of wire, radio, and television communication in interstate and foreign commerce, writings,

12  signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of

13  Title 18, United States Code, Section 1341.

14       51.    It was further a part and an object of the conspiracy that the defendants named in

15  paragraph 48, and others known and unknown, unlawfully and knowingly, would and did execute a

16  scheme and artifice to defraud a financial institution and to obtain the moneys, funds, credits, assets,

17  securities and other property owned by, and under the custody and control of, a financial institution, by

18  means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United

19  States Code, Section 1344.

20      All in violation of Title 18, United States Code, Section 1349.

21  COUNT FIVE:  (18 U.S.C. § 1956(h) – Money Laundering Conspiracy)

22       52.    Paragraphs 1 through 34 of this Second Superseding Indictment are realleged, repeated,

23  and incorporated by reference as though fully set forth herein.

24       53.    From at least in or about 2009, up through and including on or about May 6, 2015, in the

25  Northern District of California and elsewhere, the defendants,

26                 (1) ARA KARAPEDYAN,

27                 (2) MIHRAN STEPANYAN,

28                 (3) ARTUR STEPANYAN,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(4) GEVORK TER-MKRTCHYAN,

(5) KHACHIG GEUYDIJIAN,

(6) ARMAN PETROYSAN,

(7) LANNA KARAPEDYAN,

(8) MAXWELL STARSKY,

(9) SEVAK GHARGHANI,

(10) JEAN DUKMAJIAN,

(11) KARINE DUKMAJIAN,

(12) ANGELA DUKMAJIAN,

(13) ARMAN DANIELIAN,

(14) ASATOUR MAGZANYAN,

(15) TIGRAN SARKISYAN,

(16) HRIPSIME KHACHTRYAN,

(17) LOUI ARTIN,

(18) HUGO MARQUEZ,

(19) ARMAN ZARGARYAN,

(20) DMITRIY KUSTOV,

(21) ARAXIA NAZARYIAN,

(22) ALEXANDER SOLIMAN,

(23) CHERYL BARNDT,

(24) MARC ASHEGHIAN,

(25) MICHAEL ASHEGHIAN,

(26) DAVID MILLER,

(27) JAMES RUSSO,

(28) JEANNETTE COUCH,

(29) MARIE POLICHETTI,

(30) YAN GERMAN, and

(31) STANLEY AZRILYAN

1 │ and others known and unknown, unlawfully and knowingly conspired together and with one another to

2 │ violate Title 18, United States Code, Section 1956(a)(1).

3 │      54.     It was a part and an object of the conspiracy that the defendants named in the preceding

4 │ paragraph, and others known and unknown, with the intent to promote the carrying on of specified

5 │ unlawful activity and to conceal and disguise the nature, location, source, ownership, and control of the

6 │ proceeds of specified unlawful activity, to wit, conspiracy to commit identity theft, in violation of Title

7 │ 18, United States Code, Section 1028(f), conspiracy to commit access device fraud, in violation of Title

8 │ 18, United States Code, Section 1029(b)(2), and conspiracy to commit mail, wire, and bank fraud, in

9 │ violation of Title 18, United States Code, Section 1349, unlawfully and knowingly, and knowing that

10 │ property involved in a financial transaction represents the proceeds of some form of unlawful activity,

11 │ would and did conduct and attempt to conduct a financial transaction which in fact involved the

12 │ proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1).

13 │      All in violation of Title 18, United States Code, Section 1956(h).

14 │ COUNT SIX:  (18 U.S.C. § 1958 –Conspiracy to Use Interstate Facility to Commit Murder-for-Hire)

15 │      55.     Paragraphs 1 through 34 of this Second Superseding Indictment are realleged, repeated,

16 │ and incorporated by reference as though fully set forth herein.

17 │      56.     From at least in or about August 2014, through and including in or about November

18 │ 2014, in the Northern District of California and elsewhere, the defendants,

19 │           ARA KARAPEDYAN and

20 │           GEVORK TER-MKRTCHYAN,

21 │ and others known and unknown, unlawfully and knowingly conspired together and with one another to

22 │ violate Title 18, United States Code, Section 1958.

23 │      57.     It was a part and an object of the conspiracy that the defendants,

24 │           ARA KARAPEDYAN and

25 │           GEVORK TER-MKRTCHYAN,

26 │ and others known and unknown, would and did cause another to travel in interstate and foreign

27 │ commerce, and use and cause another to use the mail and any facility of interstate and foreign

28 │ commerce, with intent that a murder be committed in violation of the laws of a State and the United

1 States as consideration for the receipt of, or as consideration for a promise and agreement to pay,

2 anything of pecuniary value, in violation of Title 18, United States Code, Section 1958.

3      All in violation of Title 18, United States Code, Section 1958.

4 COUNT SEVEN: (18 U.S.C. § 371 – Conspiracy to Engage in the Unlicensed Wholesale Distribution

5           of Drugs)

6      58.    Paragraphs 1 through 34 of this Second Superseding Indictment are realleged, repeated,

7 and incorporated by reference as though fully set forth herein.

8      59.    From at least in or about 2009, up through and including on or about May 6, 2015, in the

9 Northern District of California and elsewhere, the defendants,

10                    (1) ARA KARAPEDYAN,

11                    (2) MIHRAN STEPANYAN,

12                    (3) ARTUR STEPANYAN,

13                  (4) GEVORK TER-MKRTCHYAN,

14                    (5) MAXWELL STARSKY,

15                    (6) SEVAK GHARGHANI,

16                    (7) ARMAN DANIELIAN,

17                     (8) HUGO MARQUEZ,

18                    (9) ARMAN ZARGARYAN,

19                   (10) ARAXIA NAZARYIAN,

20                  (11) ALEXANDER SOLIMAN,

21                   (12) CHERYL BARNDT,

22                   (13) ERIC FIGUEROA,

23                   (14) MARC ASHEGHIAN,

24                 (15) MICHAEL ASHEGHIAN,

25                   (16) DAVID MILLER,

26                   (17) JAMES RUSSO,

27                  (18) JEANNETTE COUCH,

28                  (19) MARIE POLICHETTI,

(20) BERNARDO GUILLEN,

(21) JAVIER RAMIREZ,

(22) YAN GERMAN, and

(23) STANLEY AZRILYAN

and others known and unknown, unlawfully and knowingly conspired together and with each another to commit an offense against the United States, to wit, to violate Title 21, United States Code, Sections 331(t), 353(e)(2)(A), and 333(b)(1)(D).

60.     It was a part and an object of the conspiracy that the defendants named in the preceding paragraph, and others known and unknown, unlawfully and knowingly would and did engage in the unlicensed wholesale distribution of drugs in interstate commerce, in violation of Title 21, United States Code, Sections 331(t), 353(e)(2)(A), and 333(b)(1)(D).

<u>Overt Acts</u>

61.     In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Northern District of California:

a.     In or about March 2011, a co-conspirator not named as a defendant herein established a post office box address in the Northern District of California.

b.     In or about August 2013, DAVID MILLER spoke over the telephone with an employee of an Internet Service Provider located in the Northern District of California.

c.     On or about August 16, 2013, ARA KARAPEDYAN picked up cash in the Northern District of California.

d.     On or about September 6, 2013, ARA KARAPEDYAN picked up cash in the Northern District of California.

e.     On or about September 26, 2013, ARA KARAPEDYAN picked up cash in the Northern District of California.

f.     On or about October 22, 2013, ARA KARAPEDYAN picked up cash in the Northern District of California.

g.     On or about November 12, 2013, ARA KARAPEDYAN picked up cash in the Northern District of California.

1          h.     On or about December 31, 2013, ARA KARAPEDYAN picked up cash in the

2  Northern District of California.

3          i.     On or about November 9, 2014, MAXWELL STARSKY sent an e-mail to a

4  recipient in the Northern District of California.

5          j.     On or about January 8, 2015, SEVAK GHARGHANI delivered drugs to the

6  Northern District of California.

7     All in violation of Title 18, United States Code, Section 371.

8  <u>COUNTS EIGHT THROUGH TWENTY-THREE:</u>      (18 U.S.C. §§ 510 & 2 – Forging

9                                         Endorsements on Treasury Checks)

10     62.    Paragraphs 1 through 34 of this Second Superseding Indictment are realleged, repeated,

11  and incorporated by reference as though fully set forth herein.

12     63.    On or about the following dates, in the Northern District of California and elsewhere, the

13  defendants,

14                              (1) ARA KARAPEDYAN,

15                        (2) GEVORK TER-MKRTCHYAN,

16                        (3) KHACHIG GEUYDIJIAN,

17                        (4) ARMAN PETROYSAN,

18                        (5) LANNA KARAPEDYAN,

19                        (6) SEVAK GHARGHANI,

20                        (7) JEAN DUKMAJIAN,

21                        (8) KARINE DUKMAJIAN,

22                        (9) ANGELA DUKMAJIAN,

23                 (10) ASATOUR MAGZANYAN, and

24                       (11) ILIA NALBANS

25  and others known and unknown, unlawfully and knowingly, and with the intent to defraud, falsely made

26  and forged an endorsement on a Treasury check of the United States, and passed, uttered, and published,

27  and attempted to pass, utter, and publish, a Treasury check of the United States bearing a falsely made

28  and forged endorsement and signature, and, with knowledge that a Treasury check of the United States

was stolen and bore a falsely made and forged endorsement and signature, received, delivered, and

retained such a Treasury check of the United States, as described in the following table:

| Count | Check Number | Check Date | Date Received | Check Amount |
|---|---|---|---|---|
| 8 | 3158-36786520 | 07/09/2012 | 10/22/2012 | $9,541.00 |
| 9 | 3158-38866733 | 08/31/2012 | 10/22/2012 | $7,674.60 |
| 10 | 3158-39263529 | 9/14/2012 | 2/22/2013 | $2,110.00 |
| 11 | 3158-39315829 | 9/19/2012 | 2/22/2013 | $4,831.00 |
| 12 | 3158-39315830 | 9/19/2012 | 2/22/2013 | $5,388.00 |
| 13 | 3158-39451127 | 9/21/2012 | 2/22/2013 | $4,208.00 |
| 14 | 3158-39848189 | 10/5/2012 | 2/22/2013 | $8,526.00 |
| 15 | 3158-40309275 | 10/19/2012 | 2/22/2013 | $406.71 |
| 16 | 3158-40309277 | 10/19/2012 | 2/22/2013 | $4,604.00 |
| 17 | 3158-40309289 | 10/19/2012 | 2/22/2013 | $6,134.00 |
| 18 | 3158-40309288 | 10/19/2012 | 2/22/2013 | $7,885.00 |
| 19 | 3158-40697373 | 10/26/2012 | 2/22/2013 | $5,705.00 |
| 20 | 3158-40697336 | 10/26/2012 | 2/22/2013 | $7,494.00 |
| 21 | 3158-40697352 | 10/26/2012 | 2/22/2013 | $7,553.00 |
| 22 | 3158-42678426 | 1/30/2013 | 2/22/2013 | $16,521.51 |
| 23 | 3158-42678384 | 1/30/2013 | 2/22/2013 | $22,644.00 |

All in violation of Title 18, United States Code, Sections 510 and 2.

FORFEITURE ALLEGATIONS:  (18 U.S.C. § 1963; 18 U.S.C. §§ 982(a)(1)(A), 981(a)(1)(C),

982(a)(2)(B), 982(a)(7), 1028(b), 1029(c); 21 U.S.C. §§ 853(a)(1) & (2); and 28 U.S.C. § 2461(c))

64.     Count One of this Second Superseding Indictment is realleged, repeated, and

incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant

to the provisions of Title 18, United States Code, Section 1963.

65.     Upon conviction of the offense alleged in Count One, the defendants,

(1) ARA KARAPEDYAN,

(2) MIHRAN STEPANYAN,

(3) ARTUR STEPANYAN,

(4) GEVORK TER-MKRTCHYAN,

(5) KHACHIG GEUYDIJIAN,

(6) ARMAN PETROYSAN,

(7) LANNA KARAPEDYAN,

(8) MAXWELL STARSKY,

(9) SEVAK GHARGHANI,

(10) JEAN DUKMAJIAN,

(11) KARINE DUKMAJIAN,

(12) ANGELA DUKMAJIAN,

(13) ARMAN DANIELIAN,

(14) ASATOUR MAGZANYAN,

(15) TIGRAN SARKISYAN,

(16) HRIPSIME KHACHTRYAN,

(17) LOUI ARTIN,

(18) HUGO MARQUEZ,

(19) ARMAN ZARGARYAN,

(20) DMITRIY KUSTOV,

(21) DAVID MILLER,

(22) YAN GERMAN,

(23) ARTIN SARKISSIANS, and

(24) STANLEY AZRILYAN

shall, pursuant to Title 18, United States Code, Section 1963, forfeit to the United States of America:

a.      Any interest acquired and maintained in violation of section 1962;

b.      Any interest in, security of, claim against, and property and contractual right of

1   any kind affording a source of influence over, any enterprise which the defendants established, operated,

2   controlled, conducted, and participated in the conduct of, in violation of section 1962; and

3              c.        Any property constituting, and derived from, any proceeds obtained, directly and

4   indirectly, from racketeering activity and unlawful debt collection in violation of 1962.

5              66.      Counts Two, Three, and Eight through Twenty-Three of this Second Superseding

6   Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein for the

7   purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 492,

8   982(a)(2)(B), 1028(b), and 1029(c)(1)(C).

9              67.      Upon conviction of any of the offenses alleged in Counts Two, Three, and Eight through

10   Twenty-Three of this Second Superseding Indictment, defendants,

11                                  (1) ARA KARAPEDYAN,

12                                  (2) MIHRAN STEPANYAN,

13                                  (3) ARTUR STEPANYAN,

14                              (4) GEVORK TER-MKRTCHYAN,

15                                  (5) KHACHIG GEUYDIJIAN,

16                                  (6) ARMAN PETROYSAN,

17                                  (7) LANNA KARAPEDYAN,

18                                  (8) MAXWELL STARSKY,

19                                  (9) SEVAK GHARGHANI,

20                                  (10) JEAN DUKMAJIAN,

21                                  (11) KARINE DUKMAJIAN,

22                                  (12) ANGELA DUKMAJIAN,

23                                  (13) ARMAN DANIELIAN,

24                              (14) ASATOUR MAGZANYAN,

25                                  (15) TIGRAN SARKISYAN,

26                              (16) HRIPSIME KHACHTRYAN,

27                                  (17) LOUI ARTIN,

28                                  (18) HUGO MARQUEZ,

(19) ARMAN ZARGARYAN,

(20) DMITRIY KUSTOV,

(21) ARAXIA NAZARYIAN,

(22) ALEXANDER SOLIMAN,

(23) CHERYL BARNDT,

(24) MARC ASHEGHIAN,

(25) MICHAEL ASHEGHIAN,

(26) DAVID MILLER,

(27) JAMES RUSSO,

(28) JEANNETTE COUCH,

(29) MARIE POLICHETTI,

(30) YAN GERMAN,

(31) ARTIN SARKISSIANS,

(32) STANLEY AZRILYAN,

(33) ARARAT YESAYAN, and

(34) ILIA NALBANS,

shall forfeit to the United States all property constituting and derived from or traceable to any proceeds the defendant obtained, directly or indirectly, as a result of said violations, any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense of which the person is convicted, any forged coins or obligations or other securities of the United States, and any property, real or personal, that is used to facilitate, or is intended to be used to facilitate, the commission of the offenses.

68.     Counts Four and Six of this Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

69.     Upon conviction of any of the offenses alleged in Counts Four and Six of this Second Superseding Indictment, the defendants,

(1) ARA KARAPEDYAN,

(2) MIHRAN STEPANYAN,

34

1    (3) ARTUR STEPANYAN,

2    (4) GEVORK TER-MKRTCHYAN,

3    (5) KHACHIG GEUYDIJIAN,

4    (6) ARMAN PETROYSAN,

5    (7) LANNA KARAPEDYAN,

6    (8) MAXWELL STARSKY,

7    (9) SEVAK GHARGHANI,

8    (10) JEAN DUKMAJIAN,

9    (11) KARINE DUKMAJIAN,

10    (12) ANGELA DUKMAJIAN,

11    (13) ARMAN DANIELIAN,

12    (14) ASATOUR MAGZANYAN,

13    (15) TIGRAN SARKISYAN,

14    (16) HRIPSIME KHACHTRYAN,

15    (17) LOUI ARTIN,

16    (18) HUGO MARQUEZ,

17    (19) ARMAN ZARGARYAN,

18    (20) DMITRIY KUSTOV,

19    (21) MICHAEL INMAN,

20    (22) ARAXIA NAZARYIAN,

21    (23) ALEXANDER SOLIMAN,

22    (24) CHERYL BARNDT,

23    (25) ERIC FIGUEROA,

24    (26) MARC ASHEGHIAN,

25    (27) MICHAEL ASHEGHIAN,

26    (28) DAVID MILLER,

27    (29) JAMES RUSSO,

28    (30) JEANNETTE COUCH,

1               (31) MARIE POLICHETTI,

2             (32) BERNARDO GUILLEN,

3             (33) JAVIER RAMIREZ,

4              (34) YAN GERMAN,

5            (35)ARTIN SARKISSIANS,

6          (36) STANLEY AZRILYAN, and

7           (37) ARARAT YESAYAN,

8  shall, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), forfeit to the United States any

9  property, real or personal, which constitutes or is derived from proceeds traceable to said offense, or a

10  conspiracy to commit said offense, including but not limited to:

11          a.     approximately $3,017,888.30 seized from Bank of Manhattan account number

12  208948807, held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

13          b.     approximately $7,983,151.78 seized from Bank of Manhattan account number

14  285126789 held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

15          c.     approximately $1,926,579.42 seized from Associated Bank account number

16  2283283550 held in the name of Minnesota Independent Cooperative, Inc. on or about 25-Feb-15;

17          d.     approximately $340,645.48 seized from Merchant Bank account number

18  70050342 held in the name of Minnesota Independent Cooperative, Inc. on or about 27-Feb-15;

19          e.     approximately $716,539.66 seized from Citibank account number 205851595

20  held in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

21          f.     approximately $2,362.80 seized from Citibank account number 205851587 held

22  in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

23          g.     approximately $1,910.00 seized from Citibank account number 205851280 held

24  in the name of Westprime Systems Inc. on or about 12-Mar-15;

25          h.     approximately $8,839.18 seized from Citibank account number 205851298 held

26  in the name of Westprime Systems Inc. on or about 12-Mar-15;

27          i.     approximately $4,934,463.32 held to settle the un-negotiated cashier's check

28  number 254492 made payable to Sky Atlantic Capital Group, Inc., and originally funded by Comerica

1   Bank account number 1894966892, held in the name of Sky Atlantic seized on or about 4-Mar-15;

2           j.     approximately $1,241,680.82 from Comerica Bank held to settle the un-

3   negotiated cashier's check number 254491 made payable to Sky Atlantic Capital Group, Inc., and

4   originally funded by Comerica Bank account number 1894966884, held in the name of Sky Atlantic

5   seized on or about 4-Mar-15;

6           k.     approximately $451,741.61 seized from Banco Santander account no.

7   3004892983, held in the name of FMC Distributors, Inc. on or about 5-Mar-15;

8           l.     Real Property and Improvements located at 1634 La Lorna Drive, Santa Ana,

9   California 92705 (APN 502-011-038);

10           m.     Real Property and Improvements located at 213 34th Street, Newport Beach,

11   California 92663 (APN 423-351-18);

12           n.     Real Property and Improvements located at 1422 Edinger Avenue, Suite 230,

13   Tustin, California 92780 (APN 939-651-30, alternate APN 430-261-32);

14           o.     Real Property and Improvements located at 1730 Capistrano Cir., Glendale, CA

15   91208 (APN 5653-015-025);

16           p.     Real Property and Improvements located at 311 Caruso Ave., Glendale, CA

17   91210 (APN 5642-014-105);

18           q.     Real Property and Improvements located at 305 Calle Francesca, San Clemente,

19   CA 92672 (APN 060-281-39)

20           r.     $1,204,581.62 in funds from Banc of California in the name of WJ Capital

21   Corporation;

22           s.     $1,000,000.00 in funds from Banc of California in the name of WJ Capital

23   Corporation;

24           t.     $1,649,169.00 in funds from Bryn Mawr Trust Company in the name of Series

25   Global Surety Company;

26           u.     $569,169 in funds from Bryn Mawr Trust Company of Delaware in the name of

27   Series Global Surety Company Endeavor Assurance;

28

1     v.  $2,193,413.72 in funds from Merchant's Bank in the name of Minnesota

2 Independent

3 Cooperative;

4     w.  $1,537,311.21 in funds from Merchant's Bank in the name of Kensington

5 Marketing Inc.; and

6     x.  $2,800,000 in funds seized from City National Bank in the name of Wilshire

7 Escrow Company.

8   70.  Count Five of this Second Superseding Indictment is realleged, repeated, and

9 incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant

10 to the provisions of Title 18, United States Code, Section 982(a)(1).

11   71.  Upon conviction of the offense alleged in Count Five of this Second Superseding

12 Indictment, the defendants,

13           (1) ARA KARAPEDYAN,

14          (2) MIHRAN STEPANYAN,

15          (3) ARTUR STEPANYAN,

16       (4) GEVORK TER-MKRTCHYAN,

17        (5) KHACHIG GEUYDIJIAN,

18         (6) ARMAN PETROYSAN,

19         (7) LANNA KARAPEDYAN,

20          (8) MAXWELL STARSKY,

21          (9) SEVAK GHARGHANI,

22          (10) JEAN DUKMAJIAN,

23         (11) KARINE DUKMAJIAN,

24        (12) ANGELA DUKMAJIAN,

25         (13) ARMAN DANIELIAN,

26        (14) ASATOUR MAGZANYAN,

27         (15) TIGRAN SARKISYAN,

28       (16) HRIPSIME KHACHTRYAN,

1              (17) LOUI ARTIN,

2             (18) HUGO MARQUEZ,

3           (19) ARMAN ZARGARYAN,

4            (20) DMITRIY KUSTOV,

5           (21) ARAXIA NAZARYIAN,

6          (22) ALEXANDER SOLIMAN,

7            (23) CHERYL BARNDT,

8           (24) MARC ASHEGHIAN,

9          (25) MICHAEL ASHEGHIAN,

10            (26) DAVID MILLER,

11            (27) JAMES RUSSO,

12         (28) JEANNETTE COUCH, and

13          (29) MARIE POLICHETTI,

14            (30) YAN GERMAN,

15         (31) ARTIN SARKISSIANS, and

16          (32) STANLEY AZRILYAN

17   shall, pursuant to 18 U.S.C. § 982(a)(1), forfeit to the United States any property, real and personal,

18   involved in said violations, and any property traceable to such property including, but not limited to the

19   following:

20            a.      approximately $3,017,888.30 seized from Bank of Manhattan account number

21   208948807, held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

22            b.      approximately $7,983,151.78 seized from Bank of Manhattan account number

23   285126789 held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

24            c.      approximately $1,926,579.42 seized from Associated Bank account number

25   2283283550 held in the name of Minnesota Independent Cooperative, Inc. on or about 25-Feb-15;

26            d.      approximately $340,645.48 seized from Merchant Bank account number

27   70050342 held in the name of Minnesota Independent Cooperative, Inc. on or about 27-Feb-15;

28            e.      approximately $716,539.66 seized from Citibank account number 205851595

1    held in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

2          f.     approximately $2,362.80 seized from Citibank account number 205851587 held

3    in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

4          g.     approximately $1,910.00 seized from Citibank account number 205851280 held

5    in the name of Westprime Systems Inc. on or about 12-Mar-15;

6          h.     approximately $8,839.18 seized from Citibank account number 205851298 held

7    in the name of Westprime Systems Inc. on or about 12-Mar-15;

8          i.     approximately $4,934,463.32 held to settle the un-negotiated cashier's check

9    number 254492 made payable to Sky Atlantic Capital Group, Inc., and originally funded by Comerica

10    Bank account number 1894966892, held in the name of Sky Atlantic seized on or about 4-Mar-15;

11          j.     approximately $1,241,680.82 from Comerica Bank held to settle the un-

12    negotiated cashier's check number 254491 made payable to Sky Atlantic Capital Group, Inc., and

13    originally funded by Comerica Bank account number 1894966884, held in the name of Sky Atlantic

14    seized on or about 4-Mar-15;

15          k.     approximately $451,741.61 seized from Banco Santander account no.

16    3004892983, held in the name of FMC Distributors, Inc. on or about 5-Mar-15;

17          l.     Real Property and Improvements located at 1634 La Lorna Drive, Santa Ana,

18    California 92705 (APN 502-011-038);

19          m.     Real Property and Improvements located at 213 34th Street, Newport Beach,

20    California 92663 (APN 423-351-18);

21          n.     Real Property and Improvements located at 1422 Edinger Avenue, Suite 230,

22    Tustin, California 92780 (APN 939-651-30, alternate APN 430-261-32);

23          o.     Real Property and Improvements located at 1730 Capistrano Cir., Glendale, CA

24    91208 (APN 5653-015-025);

25          p.     Real Property and Improvements located at 311 Caruso Ave., Glendale, CA

26    91210 (APN 5642-014-105);

27          q.     Real Property and Improvements located at 305 Calle Francesca, San Clemente,

28    CA 92672 (APN 060-281-39)

1    r.    $1,204,581.62 in funds from Bane of California in the name of WJ Capital

2    Corporation;

3    s.    $1,000,000.00 in funds from Bane of California in the name of WJ Capital

4    Corporation;

5    t.    $1,649,169.00 in funds from Bryn Mawr Trust Company in the name of Series

6    Global Surety Company;

7    u.    $569,169 in funds from Bryn Mawr Trust Company of Delaware in the name of

8    Series Global Surety Company Endeavor Assurance;

9    v.    $2,193,413.72 in funds from Merchant's Bank in the name of Minnesota

10   Independent Cooperative;

11   w.    $1,537,311.21 in funds from Merchant's Bank in the name of Kensington

12   Marketing Inc.; and

13   x.    $2,800,000 in funds seized from City National Bank in the name of Wilshire

14   Escrow Company..

15   72.    Count Seven of this Second Superseding Indictment is realleged, repeated, and

16   incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant

17   to the provisions of Title 18, United States Code, Section 982(a)(7) and Title 21, United States Code,

18   Section 853.

19   73.    Upon conviction of the offense alleged in Count Seven of this Second Superseding

20   Indictment, the defendants,

21                    (1) ARA KARAPEDYAN,

22                    (2) MIHRAN STEPANYAN,

23                    (3) ARTUR STEPANYAN,

24                    (4) GEVORK TER-MKRTCHYAN,

25                    (5) MAXWELL STARSKY,

26                    (6) SEVAK GHARGHANI,

27                    (7) ARMAN DANIELIAN,

28                    (8) HUGO MARQUEZ,

41

(9) ARMAN ZARGARYAN,

(10) ARAXIA NAZARYIAN,

(11) ALEXANDER SOLIMAN,

(12) CHERYL BARNDT,

(13) ERIC FIGUEROA,

(14) MARC ASHEGHIAN,

(15) MICHAEL ASHEGHIAN,

(16) DAVID MILLER,

(17) JAMES RUSSO,

(18) JEANNETTE COUCH,

(19) MARIE POLICHETTI,

(20) BERNARDO GUILLEN,

(21) JAVIER RAMIREZ,

(22) YAN GERMAN, and

(23) STANLEY AZRILYAN

shall, pursuant to 21 U.S.C. § 853(a)(1) and (2), forfeit to the United States all right, title, and interest in property constituting and derived from any proceeds defendants obtained, directly or indirectly, as a result of said violations, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, or any property traceable to such property, including but not limited to:

     a.     approximately $3,017,888.30 seized from Bank of Manhattan account number 208948807, held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

     b.     approximately $7,983,151.78 seized from Bank of Manhattan account number 285126789 held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

     c.     approximately $1,926,579.42 seized from Associated Bank account number 2283283550 held in the name of Minnesota Independent Cooperative, Inc. on or about 25-Feb-15;

     d.     approximately $340,645.48 seized from Merchant Bank account number 70050342 held in the name of Minnesota Independent Cooperative, Inc. on or about 27-Feb-15;

1         e.     approximately $716,539.66 seized from Citibank account number 205851595

2   held in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

3         f.     approximately $2,362.80 seized from Citibank account number 205851587 held

4   in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

5         g.     approximately $1,910.00 seized from Citibank account number 205851280 held

6   in the name of Westprime Systems Inc. on or about 12-Mar-15;

7         h.     approximately $8,839.18 seized from Citibank account number 205851298 held

8   in the name of Westprime Systems Inc. on or about 12-Mar-15;

9         i.     approximately $4,934,463.32 held to settle the un-negotiated cashier's check

10  number 254492 made payable to Sky Atlantic Capital Group, Inc., and originally funded by Comerica

11  Bank account number 1894966892, held in the name of Sky Atlantic seized on or about 4-Mar-15;

12        j.     approximately $1,241,680.82 from Comerica Bank held to settle the un-

13  negotiated cashier's check number 254491 made payable to Sky Atlantic Capital Group, Inc., and

14  originally funded by Comerica Bank account number 1894966884, held in the name of Sky Atlantic

15  seized on or about 4-Mar-15;

16        k.     approximately $451,741.61 seized from Banco Santander account no.

17  3004892983, held in the name of FMC Distributors, Inc. on or about 5-Mar-15;

18        l.     Real Property and Improvements located at 1634 La Lorna Drive, Santa Ana,

19  California 92705 (APN 502-011-038);

20        m.     Real Property and Improvements located at 213 34th Street, Newport Beach,

21  California 92663 (APN 423-351-18);

22        n.     Real Property and Improvements located at 1422 Edinger Avenue, Suite 230,

23  Tustin, California 92780 (APN 939-651-30, alternate APN 430-261-32);

24        o.     Real Property and Improvements located at 1730 Capistrano Cir., Glendale, CA

25  91208 (APN 5653-015-025);

26        p.     Real Property and Improvements located at 311 Caruso Ave., Glendale, CA

27  91210 (APN 5642-014-105);

28        q.     Real Property and Improvements located at 305 Calle Francesca, San Clemente,

CA 92672 (APN 060-281-39)

        r.     $1,204,581.62 in funds from Bane of California in the name of WJ Capital Corporation;

        s.     $1,000,000.00 in funds from Bane of California in the name of WJ Capital Corporation;

        t.     $1,649,169.00 in funds from Bryn Mawr Trust Company in the name of Series Global Surety Company;

        u.     $569,169 in funds from Bryn Mawr Trust Company of Delaware in the name of Series Global Surety Company Endeavor Assurance;

        v.     $2,193,413.72 in funds from Merchant's Bank in the name of Minnesota Independent Cooperative;

        w.     $1,537,311.21 in funds from Merchant's Bank in the name of Kensington Marketing Inc.; and

        x.     $2,800,000 in funds seized from City National Bank in the name of Wilshire Escrow Company.

All in violation of Title 18, United States Code, Sections 492, 981(a)(1)(A), 981(a)(1)(C), 982(a)(1), 982(a)(2)(B), 982(a)(7), and 1963; Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED:

2-11-16

BRIAN J. STRETCH
Acting United States Attorney

DAVID R. CALLAWAY
Chief, Criminal Division

A TRUE BILL.

FOREPERSON

1  (Approved as to form: _____ )

2  DAMALI A. TAYLOR

3  DAVID B. COUNTRYMAN
   Assistant United States Attorneys

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28